# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOSEPH ANTHONY McKINLEY,     )
     )
     Plaintiff,     )
     )
     vs.     )     Case No. CIV-11-51-D
     )
MITZI MADDOX[1] and DARLENE     )
ROBINSON,     )
     Defendants.     )

## REPORT AND RECOMMENDATION

This report addresses four pending, related motions:

1) A motion by the two named Defendants, Mitzi Maddox and Darlene Robinson (Defendants), to dismiss this action with prejudice as a sanction for Plaintiff Joseph McKinley's (Plaintiff) failure to appear – twice – for his deposition. Doc. 59.

2) Defendants' motion for summary judgment. Doc. 66.

3) Plaintiff's motion for summary judgment. Docs. 71, 72. (Plaintiff filed a combined "Response to Defendant's [sic] Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment and Brief in Support;" the identical filing is docketed once as Plaintiff's response, Doc. 71, and again as Plaintiff's motion, Doc. 72.)

4) Defendants' motion to strike as untimely both Plaintiff's response to their summary judgment motion and Plaintiff's own motion for summary judgment; to strike Plaintiff's motion for summary judgment for failure to properly support his material facts; to strike any purported claim newly raised by Plaintiff, including any claim for defamation and slander; and to reject Plaintiff's apparent

---

[1] Plaintiff originally identified this Defendant as Mitzi "Mattox." Doc. 1. The style of the case is corrected to reflect the Defendant's correct name, Mitzi "Maddox."

request to amend his complaint to state a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.  Doc. 73.

Resolution of these motions requires an understanding of the development of Plaintiff's claims.

## I.      Relevant history of the litigation.

### A.      This Court's dismissal of Plaintiff's complaint.

When Plaintiff filed this action seeking punitive damages for the alleged violation of the right to practice his religion, he was an inmate in the custody of the Oklahoma Department of Corrections (DOC) and was incarcerated at the Enid Community Corrections Center (ECCC).  Doc. 1.  He named two Defendants, Mitzi Maddox, employed as "case manager supervisor," *id.*, and Darlene Robinson, employed as a "case manager."  *Id.* at 2.

United States District Judge Timothy D. DeGiusti referred the matter to United States Magistrate Judge Valerie K. Couch for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).  Doc. 7.  Ultimately, on consideration of Defendants' motion to dismiss for failure to exhaust administrative remedies, Judge Couch reported that Plaintiff had, in fact, complied with all administrative exhaustion requirements and, consequently, she recommended the denial of Defendants' motion.  Doc. 25.  Nonetheless, Judge Couch further recommended that the complaint be dismissed pursuant to

28 U.S.C. § 1915(e)(B)(ii), in part because Plaintiff's "Complaint and attachments thereto fail to allege facts demonstrating the Defendants prohibited Plaintiff from the exercise of his religion." *Id.* at 8. Because Plaintiff failed to allege either pervasive violations of his right to free exercise of religion or facts demonstrating personal participation by the named Defendants, Judge Couch concluded that he failed to state a plausible claim for relief under 42 U.S.C. § 1983. *Id.* at 9.

Over Plaintiff's objection, Doc. 29, Judge DeGiusti adopted Judge Couch's recommendation, Doc. 30, and entered judgment in Defendants' favor. Doc. 31. Plaintiff appealed from the judgment. Doc. 32.

## B. The Tenth Circuit Court of Appeals' order and judgment.

The Tenth Circuit reversed the judgment of the district court and remanded the matter for further proceedings consistent with its order and judgment. *McKinley v. Maddox*, 493 F. App'x 928, 933-34 (10th Cir. 2012). In so doing, the court construed Plaintiff's complaint along with the factual allegations he added in his objection to Judge Couch's recommendation, thus squarely framing the factual scope of Plaintiff's claims and the legal issues now back before this Court.

### 1. Claims raised in Plaintiff's complaint.

The Tenth Circuit identified the following claims set out by Plaintiff in his

complaint and incorporated attachments:

- Defendant Maddox – "the Case Manager Supervisor" at ECCC and Defendant Robinson – "a Case Manager" – "denied him his right to practice his religion and participate in offsite religious activities from October 18 to November 22, 2010." *Id.* at 929.

- On October 18, the Defendants "informed him that he was restricted from leaving ECCC, and therefore not permitted to participate in any outside activities, because he was on Executive Review" and "that they needed to prepare a packet and submit it for approval before he could go offsite." *Id.*

- "That same day . . . [Defendant] Maddox approved [his] request to go offsite to play piano at a banquet." *Id.*

- "On October 22, [Defendant] Maddox also allowed [him] to go shopping offsite." *Id.*

- "[E]ach week thereafter he was again permitted to participate in offsite shopping activities." *Id.*

- On October 25, Defendant Maddox sent a memo to the Deputy Director of Community Corrections, Reginald Hines, regarding an "Exception for Executive Review" for Plaintiff, advising that he was serving a four-year sentence for drug trafficking and asking that he be permitted to attend church services, take part in shopping trips, and be placed on a work crew. *Id.*

- He signed up at ECCC Central Control to attend an offsite church service on October 31 and was permitted to leave and go to the church. *Id.* at 929-30. Before the start of services, an ECCC officer found him and returned him to the facility. *Id.* at 930. An ECCC lieutenant then informed him of Defendant Maddox's view of his restriction status "and referred him to a memo that [Defendant] Maddox had submitted to Central Control on October 20 . . . ." *Id.*

- He sent Requests to Staff to Defendants on November 15, requesting copies of his Executive Review documentation. *Id.*

Defendant "Maddox responded that the forms she had previously sent to [Deputy Director] Hines had been re-transmitted to Hines' office on November 16. She stated that she would stay on top of the issue and try to get Hines' approval that week." *Id.*

- On November 17, he was chosen to be a part of an offsite work crew. *Id.* The next day, he "spoke to [Defendant] Maddox about his Executive Review, disputing that he was subject to such restrictions. He noted that, while he had not been allowed to go offsite for religious activities, he had been permitted to go offsite for other activities." *Id.*

- He submitted a Request to Staff to Defendant Maddox on that same day and on the same issue. *Id.* In response, Defendant Maddox advised him that "'Mr. Hines has the authority to review for extra privileges granted at community. Executive Reviews are considered higher risk. I have no [written policies] to provide you.'" *Id.*

- Deputy Director Hines approved his participation in offsite activities as of November 22. *Id.* On November 29, Defendant Robinson responded to his Request to Staff, dated November 15, telling him that she had already given him a copy of a written policy and had talked to him extensively about his restrictions. *Id.*

## 2. Supplemental factual allegations in Plaintiff's objection.

The circuit court also considered the following claims that Plaintiff raised in his objection to Judge Couch's recommendation:

- He is a devout Baptist. *Id.*

- He is required to be under the guidance and counseling of a pastor/teacher. *Id.* at 930-31.

- Both Bible study and worship services are significant to the growth of his faith. *Id.* at 931.

- He "questioned the validity of the Executive Review restrictions because [Defendant] Maddox allowed him to go offsite for various non-religious activities before [Deputy Director] Hines finally approved him going offsite for any purpose."

- Defendant "Maddox was the employee at ECCC responsible for coordinating religious services, but there were no religious services or activities offered onsite at ECCC during the time he was restricted from going to offsite church services." *Id.*

- "[H]e had talked to [Defendants] Robinson and Maddox about the lack of religious services at ECCC." *Id.*

- "[D]efendants denied him his right to exercise his religious beliefs by precluding him from attending offsite services for over one month, while failing to provide onsite church services or allowing faith-based volunteers onsite during that time period." *Id.*

- "[T]he only offenders at ECCC who were restricted from attending offsite church services were those who had been convicted of drug trafficking." *Id.*

- Under "ECCC's Steps Program . . . offenders are not permitted to attend worship services outside of ECCC until they have reached Step 2." *Id.* (footnote omitted).

- "[U]nder the Executive Review restrictions, he remained precluded from attending offsite church services even after reaching Step 2." *Id.*

### 3. Plaintiff's claims of error on appeal.

Plaintiff maintained on appeal that the district court erred in dismissing his complaint for failure to state a claim upon which relief can be granted, claiming that it states claims for relief under the First and Fourteenth Amendments, the Equal Protection Clause, and RLUIPA. *Id.* at 932.

### 4. Construction of Plaintiff's claims and the issues on remand.

Because this Court's dismissal of Plaintiff's complaint was limited to his First Amendment free-exercise claim, the Tenth Circuit began its discussion with a summary of the law applicable to such a claim:

> "Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs. What constitutes a 'reasonable opportunity' is determined in reference to legitimate penological objectives." *Gallagher* [*v. Shelton*], 587 F.3d [1063,] 1069 [(10th Cir. 2009)] (citation omitted). In order to state a constitutional violation based on a free-exercise claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs." *Id.* (quotation and brackets omitted). And he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* at 1070 (quotation omitted). If the prisoner satisfies this initial step, defendants "may identify the legitimate penological interests that justified the impinging conduct," and "[t]he burden then returns to the prisoner to show that these articulated concerns were irrational." *Kay* [*v. Bemis*], 500 F.3d [1214,] 1218 & n.2 [(10th Cir. 2007)] (quotations and brackets omitted). The court then balances factors set forth by the Supreme Court "to determine the reasonableness of the regulation." *Id.* at 1219 (listing the relevant factors).

*Id.* (footnote omitted). Concluding that this Court "construed too narrowly the facts alleged by [Plaintiff]," *id.* at 932-33, the circuit court identified these claims:

> • Plaintiff "alleged that [D]efendant Maddox intentionally prevented him from attending offsite religious services under the guise of Executive Review restrictions when she had the authority to override those restrictions based on her granting [Plaintiff]

permission to go offsite from ECCC for non-religious purposes." *Id.* at 933.

- Plaintiff "alleges that [Defendant] Maddox was the employee at ECCC responsible for coordinating religious services, yet she failed to provide alternative, onsite religious services during the time that she precluded him from attending offsite services." *Id.*

- Plaintiff "alleges more than an isolated or de minimus burden on his exercise of his sincerely-held religious beliefs: he claims he was intentionally denied the right to attend all church services, either offsite or onsite at ECCC, for a month." *Id.*

Because Defendants failed to "point . . . to any case law holding that such a burden on religious exercise is insubstantial," the Tenth Circuit found that this Court erred in dismissing Plaintiff's First Amendment free exercise claim and remanded the case for further proceedings. *Id.*

## C. Proceedings on remand.

Following remand, this Court referred the matter to Magistrate Judge Bana Roberts, Doc. 40, who took notice of Plaintiff's recent release from incarceration and his new residence in Gulfport, Mississippi. Doc. 41. She promptly ordered Defendants to answer Plaintiff's complaint and established discovery and dispositive motion deadlines. Doc. 44. In so doing, Judge Roberts implicitly construed Plaintiff's complaint to state facial claims for relief under RLUIPA and the Equal Protection Clause. *See McKinley*, 493 F. App'x at 933-34.

Before the expiration of discovery deadlines, Defendants twice noticed Plaintiff for his deposition in Oklahoma City and served him with subpoenas, Docs. 47, 53. After the referral of the case was transferred to the undersigned, Defendants filed their motion seeking to dismiss Plaintiff's case as a sanction for his failure to appear for his deposition as noticed. Doc. 59. In addition, both sides moved for summary judgment, Docs. 66, 72, and Defendants then asked the court to strike Plaintiff's summary judgment motion as well as his response to their own summary judgment request. Doc. 73. The four motions are now at issue.

## II.     Defendants' motion for sanctions.

### A.     The facts.

Several weeks before the expiration of the initial discovery deadline set by Judge Roberts, Defendants noticed Plaintiff for his deposition – to be conducted in Oklahoma City ten days from the date of their notice – and served the notice, along with a subpoena, by certified mail sent to Plaintiff at his residence in Gulfport, Mississippi. Doc. 47. On the same day the deposition was scheduled, Plaintiff filed a motion to quash the subpoena, "invok[ing] . . . "Fed. R. Civ. P. 45(c)(1), and (3)" and claiming that he "resides outside the state of Oklahoma and more than 100 miles from the court and the place designated to take deposition." Doc. 48, at 1. He claimed that he did not receive the subpoena

until four days before the deposition was scheduled and argued that "receipt of this subpoena fails to allow Plaintiff reasonable time to comply." *Id.* at 2. He further maintained that he was "unable to appear in person due to distance of travel and the fact this subpoena would impose undue burden and/or expenses on Plaintiff." *Id.* He added, "If this court seeks to modify subpoena, Plaintiff offers to be available for telephonic deposition." *Id.*

Plaintiff did not appear for his deposition, and Defendants sought and received an extension of the discovery deadline from Judge Roberts. Docs. 49, 50. They also responded to the motion to quash, complaining that Plaintiff knew he would not be appearing for the deposition but failed to call their counsel to reschedule or to advise that he would not be appearing. Doc. 52, at 2. Consequently, they incurred the expense of retaining a court reporter.[2] *Id.* at Ex. 3. Defendants also registered their objection to a telephonic deposition, contending such a deposition would "substantially hinder Defendants' ability to

---

[2]    After Plaintiff failed to appear for his deposition, counsel for Defendants went on the record to state

> that [Plaintiff] has not contacted our office to make any attempt to reschedule this deposition. He has not notified us that he would be unable to appear. And as of 10:31 a.m., there has been nothing filed in this case suggesting that [he] intended to modify or quash the subpoena or notice of this deposition.

Doc. 52, Ex. 3, at 2.

assess the credibility of Plaintiff and determine the best course of questioning." *Id.* at 5-6.  Significantly, Defendants further noted, their  subpoena aside, that Plaintiff – as a party – had been compelled to attend the scheduled deposition pursuant to their notice.  *Id.* at 6.

Several days later, before Judge Roberts ruled on the pending motion to quash, Defendants again noticed Plaintiff for his deposition in Oklahoma City and again served him with a subpoena.  Doc. 53.  This time, Defendants allowed Plaintiff four weeks between the date of the mailing of the notice and the date set for the deposition.  *Id.*  In light of the issuance of the new subpoena, Judge Roberts deemed the first motion to quash to be moot.  Doc. 55.  Plaintiff then filed a motion to quash the second subpoena on February 4, 2013, acknowledging that he had received it on January 22.  Doc. 56, at 2.  Making no reference to the notice of deposition, he argued that the subpoena should be quashed because "[t]he place specified for the deposition is approximately 776 miles from where Plaintiff resides with driving time of more than 11 hours" and he "does not have the means and/or financial resources to travel to and from [Oklahoma City]."  *Id.*  He again noted his "availab[ility] for oral examination telephonically . . . ."  *Id.*

Judge Roberts entered an order the following day – eight days before the date of the scheduled deposition – advising Plaintiff that in addition to having

been served with the subpoena he was seeking to quash or modify, he had also been "*notice*[*d*]" for deposition as a party pursuant to Fed. R. Civ. P. 30(a)(1). Doc. 58, at 1. Further, Judge Roberts specifically advised Plaintiff that "Fed. R. Civ. P. 37(d)(1)(A)(i) addresses a party's failure to attend his own deposition 'after being served with proper *notice*[.]'" *Id.* at n.1.

Judge Roberts told Plaintiff that this Court would not consider his motion to quash because he had failed to declare in writing pursuant to Local Civil Rule (LCvR)37.1 that he had conferred with opposing counsel by telephone and had attempted, but failed, to resolve Plaintiff's objection to the scheduled deposition. *Id.* at 1-2.

Six days before the date set for the deposition, the referral of the case was transferred to the undersigned. Plaintiff, however, filed nothing further, and the February 13 deposition date came and went.

Defendants then filed their motion for sanctions on March 1, 2013, asking that Plaintiff's action be dismissed with prejudice as a sanction for his willful failure to appear for his properly noticed deposition. Doc. 59. In support, they alleged that Plaintiff had not only failed to appear for the February 13 deposition but that he had failed, once again, to contact defense counsel. *Id.* at 3. And, as with the previous aborted deposition, defense counsel reported hiring and paying for a court reporter "in reliance on Plaintiff's required attendance." *Id.*

12

Plaintiff responded to the motion, first, by declaring under penalty of perjury that he "has cooperated, responded, and complied appropriately within means . . . by respond[ing] to Defendants' interrogatories, requests for production of documents and request for admissions." Doc. 61, at 1, 4. Second, he declared that he "has contacted and conferred with Defendants' attorney in regards to matters concerning this case" and "conferred with attorney's [sic] for the Defendants concerning the Motion to Quash and/or Modify Subpoena filed by the Plaintiff." *Id.* at 1. Third, he declared his "willingness to adhere to deposition within reason," arguing that he is not a resident of Oklahoma; that he was incarcerated in Oklahoma when he filed his lawsuit; and that he "has pleaded with the Defendants and the Court to modify the place or terms of the deposition." *Id.* at 1-2. Fourth, he declared that he is a poor litigant and that attempting to travel for his deposition would "impose undue burden and/or expenses" on him. *Id.* at 2. Fifth, he cited to Fed. R. Civ. P. 45(C), claiming "the serving party must show a substantial need for the testimony" and that "Defendants have not shown an actual physical need for Plaintiff to appear in person for oral deposition." *Id.* Sixth, Plaintiff submitted that Defendants can conduct their oral deposition by "remote means." *Id.*

Defendants replied to Plaintiff's response with a declaration of their own:

Plaintiff begins his response with a blatant misrepresentation to the

13

Court. He claims that he has "conferred with attorney's for the Defendants concerning the Motion to Quash and/or Modify Subpoena." This is false. Plaintiff has not attempted to contact counsel regarding either of his Motions to Quash. In fact, counsel for Defendants attempted to contact Plaintiff regarding his two (2) depositions, but Plaintiff never answered or returned the calls.

Doc. 63, at 1.

Defendants then sought an extension of the deadline to file dispositive motions. Doc. 64. They stated, in part, that "[c]ounsel for Defendants attempted to contact Plaintiff, but Plaintiff's current phone number has been disconnected.[3] Therefore, Defendants are not aware of whether Plaintiff has any objection to the requested extension." *Id.* at 2. The undersigned granted the extension. Doc. 65.

Defendants timely filed their motion for summary judgment on May 10, 2013. Doc. 66. Plaintiff asked for an extension of time to respond – so that he could conduct discovery. Doc. 67. The discovery deadline had long since expired (on February 22, 2013, Doc. 50), and the undersigned denied the extension to the extent it was requested on those grounds. Doc. 70, at 1. Nonetheless, the undersigned *sua sponte* gave Plaintiff until "on or before Wednesday, July 10, 2013" to respond to Defendants' summary judgment motion. *Id.* at 1-2. The undersigned specifically advised Plaintiff that he could not invoke the prison

---

[3]     Plaintiff has not disputed this statement in any subsequent filing.

mailbox rule because he was no longer incarcerated. *Id.* at n.1.

Plaintiff filed his response to the summary judgment motion on July 12, 2013.[4] Doc. 71. He has not responded to Defendants' July 30, 2013 motion to strike that response, a motion partially grounded on the fact that Plaintiff filed it two days late. Doc. 73.

## B.    Standard of review.

"Although we construe [Plaintiff's] pleadings liberally because he is a pro se litigant, he nevertheless must follow the same rules of procedure that govern other litigants." *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

## C.    Application of the law governing the dismissal of an action as a discovery sanction.

As Judge Roberts informed Plaintiff before he irrevocably decided that he would not appear for his noticed deposition, "Fed. R. Civ. P. 37(d)(1)(A)(i) addresses a party's failure to attend his own deposition 'after being served with proper notice[.]'" Doc. 58 at n.1 (emphasis omitted). The sanctions referenced in the rule cited by Judge Roberts "may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(d)(3). Under that rule, this Court may issue an order:

---

[4]    And, despite the expiration of the May 11, 2013 dispositive motion deadline, *see* Doc. 65, Plaintiff also filed his own motion for summary judgment. Doc. 72.

- directing that specified facts be deemed established for purposes of the case;

- prohibiting the disobedient party from supporting or opposing specified claims or defenses or from introducing specified evidence;

- striking pleadings or parts of pleadings;

- staying the proceedings until the disobedient party complies with the discovery request;

- dismissing part or all of the action; or

- entering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

Tenth Circuit law governing the sanction of outright dismissal of an action – the sanction sought by Defendants – is predicated on that Court's insistence "that dismissal represents an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). This cautionary admonition is underscored when, as here, the disobedient party appears pro se. *Id.* at n.3 ("Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation.").

The Tenth Circuit further limits a district court's discretion in choosing a sanction by requiring "that the chosen sanction . . . be '"just."'" *Id.* at 920

(quotation omitted).  Thus, "[b]efore choosing dismissal as a just sanction, a [district] court should ordinarily consider a number of factors . . . ."  *Id.* at 921.  These factors include (as defined by the facts presented here):

- the degree of actual prejudice to the Defendants;

- the amount of interference with the judicial process;

- Plaintiff's culpability;

- whether Plaintiff had advance warning from the court that dismissal of the action would be a likely sanction for his failure to attend his own deposition after being served with notice; and

- the efficacy of less extreme sanctions.

*See id.*  Nonetheless, "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction."  *Id.*  And, "often some of these factors will take on more importance than others."  *Id.* at 922.

## 1. Plaintiff's culpability.

Defendants maintain that the sanction of dismissal is warranted "against Plaintiff for twice refusing to appear and testify after twice receiving notice to take his deposition."  Doc. 63, at 1.  It was the Defendants, however, who were initially at fault by failing to give Plaintiff reasonable notice of the first

deposition.[5]  Facing a December 24, 2012 discovery deadline, they waited until Tuesday, December 11, 2012, to mail their notice/subpoena from Oklahoma City to Gulfport, Mississippi for a deposition to be conducted in Oklahoma City on Friday, December 21, 2012.  Doc. 47.  Plaintiff promptly filed a well-supported motion to quash the subpoena, and did not appear.  Doc. 48.  Clearly, it would have been far preferable[6] for Plaintiff to contact defense counsel to state his position and to advise that he would not be appearing at the deposition.  But Defendants, through counsel, invited the possibility that Plaintiff would not appear by failing to provide him with reasonable notice.  In sum, Plaintiff's failure to appear for the first noticed deposition is not sanctionable by dismissal or otherwise.

Nonetheless, Plaintiff's conduct with regard to the second notice/subpoena for his deposition is fully blameworthy.  This time, Defendants gave Plaintiff ample notice for the scheduled February 13, 2013 deposition – he received the notice/subpoena on January 22, 2013.  Doc. 56, at 2.  And, this time, he was demonstrably aware of his obligation as a party – regardless of any subpoena –

---

[5]     "Reasonable notice to parties as contemplated by Fed. R. Civ. P. 30(b)(1) for the taking of depositions shall be 14 days."  LCvR30.1(a)(2).

[6]     Plaintiff, who has ably demonstrated his familiarity with the requirements of this Court's local rules, Doc. 24, at 1, did not state in his motion, as he is required to do, that he had conferred by telephone with defense counsel in a good faith effort to resolve the matter.  *See* LCvR37.1.

to appear for deposition pursuant to notice. *See* Doc. 52, at 6. Yet, while he sought relief from the court, he focused only on the subpoena, ignoring the notice. Doc. 56. And, his request for relief was far from prompt – he filed his motion February 4, 2013, almost two weeks after he received notice. *Id.* Even so, this time, Judge Roberts had sufficient time[7] to unequivocally advise him, by an order mailed to him eight days before the scheduled deposition

- that he, as party-Plaintiff, was under notice pursuant to Fed. R. Civ. P. 30(a)(1) to appear for his deposition on February 13, 2013;

- that Fed. R. Civ. P. 37(d)(1)(A)(i) speaks to the failure of a properly noticed party to attend his own deposition; and

- that the Court would not consider his motion to quash because he had failed to state – as required by LCvR37.1 – that he had telephonically conferred in good faith with defense counsel but had been unable to resolve the issue.

Doc. 58. Nonetheless, despite Judge Roberts' careful, cautionary explanation, Plaintiff filed nothing further and failed to appear for the scheduled deposition on February 13. And, this time, Plaintiff knew that absent communication from him, defense counsel would necessarily assume that Plaintiff intended to appear for the noticed deposition. So, defense counsel would consequently be obliged to retain a court reporter who, along with defense counsel, would be obliged to sit and wait until it became apparent that Plaintiff was not going to appear. *See*

---

[7] The first time, despite Plaintiff's prompt effort, the motion to quash was not filed until the time set for the deposition had passed. Doc. 48.

Doc. 52, at 2, Ex. 3; Doc. 49, at 1-2.

For his part, Plaintiff does not deny that he "fail[ed], after being served with proper notice, to appear for [his February 13] deposition . . . ." Fed. R. Civ. P. 37(d)(1)(A)(i). Neither does he deny Defendants' contention that he failed to advise their counsel that he had no intention of appearing for that deposition.[8] Doc. 61, at 1. Instead, he only generally, and vaguely, claims that he "has contacted and conferred with Defendants' attorney in regards to matters concerning this case" and that he "conferred with attorney's [sic] for the Defendants concerning the Motion to Quash and/or Modify Subpoena filed by the Plaintiff."[9] *Id.*

The balance of Plaintiff's response to the motion for sanctions is nothing more than his recapitulation of the reasons why he believes he should not be required to come to Oklahoma for his deposition rather a reasoned, supported statement of the reasons why sanctions should not be imposed for his willful – intentional, knowing, deliberate – refusal to abide by federal procedural law.

_____

[8] Nor would such a denial ring true. Had Plaintiff advised defense counsel that he was not going to appear for the February 13 deposition, it is reasonable to conclude that defense counsel would have simply confirmed and documented his refusal by letter rather than by retaining a court reporter and further wasting their time, waiting for him to appear when they knew he would not.

[9] Defendants vehemently deny *any* conference with Plaintiff regarding *either* of his motions to quash. Doc. 63, at 1.

Put another way, Plaintiff is making the objections he could have raised had he heeded Judge Roberts' order by first having a good faith, telephonic conference with defense counsel and, then, if that was unsuccessful, by coming back to the court and requesting relief. Instead, he willfully failed to appear and such a failure "is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

### 2. Plaintiff's willful conduct has significantly prejudiced the Defendants and interfered with the judicial process.

The undersigned's painstaking explanation of Plaintiff's factual claims[10] was deliberate: the claims are largely dependent on the believability of Plaintiff's version of events. Plaintiff, however, denied Defendants their chosen means of appraising his believability, refusing to engage in the judicial process and shifting the burden to Defendants to prosecute this motion for sanctions. Then, when Defendants attempted to contact him to determine whether he objected to an extension of the dispositive motion deadline, his current phone number was disconnected. Doc. 64, at 2. With the case in limbo and left with no reasonable expectation of deposing a Plaintiff whom they were unable to contact, Defendants filed their motion for summary judgment. Defendants, who

---

[10]     *See supra* § I.B.

hoped to avoid the additional prejudice of trial, had to proceed without the benefit of important – potentially dispositive – evidence. Plaintiff's refusal to "'follow the rules unless they suit his schedule and his one-sided view regarding how this case should proceed'" further derailed the judicial process, this time the summary judgment process. *Smith v. McKune*, 345 F. App'x 317, 319 (10th Cir. 2009) (citation omitted).

### 3. No lesser sanction than dismissal with prejudice suffices in this case, and Plaintiff has given this Court no reason to believe he will abide by established rules.

Plaintiff's response, Doc. 61, to the sanctions motion forecasts his intention to hold firm to his "one-sided view." *Smith*, 345 F. App'x at 319. He takes no responsibility for his brazen failure to appear for his properly noticed deposition – in his view, he has already done enough by responding to interrogatories and requests for admission and production of documents. Doc. 61, at 1. Instead, facing the possible dismissal of his case, he announces his "willingness to adhere to deposition *within reason*." *Id.* (emphasis added). This ignores the fact that the Defendants have already been forced to file for summary judgment without the benefit of Plaintiff's vital, credibility-tested testimony. His expressed "willingness" to appear for deposition comes too late to do anything except

burden the Defendants.[11]  And, Plaintiff's intransigent adherence to his "one-sided view," *Smith*, 345 F. App'x at 319, that a "deposition within reason" means a deposition by remote means, Doc. 61, at 2, does nothing to engender a reasonable expectation by this Court that he will follow any rules but his own should his action survive Defendants' motion.

In this vein, Plaintiff's failure to timely file his response to Defendants' summary judgment motion is yet another predictor of his continued intent to flout this Court's rules and orders.  The undersigned advised Plaintiff of the precise date on which his response was due to be filed and, in that same order, cautioned him against reliance on the prison mailbox rule.  Doc. 70.  Undaunted, Plaintiff filed his response two days late.  Doc. 71.

      **4.**      **Plaintiff was aware of the possibility of dismissal of this action as a sanction for his failure to attend the noticed deposition.**

---

[11]    Thus, the lesser sanction of staying this case until Plaintiff appears for deposition in Oklahoma City would only punish the Defendants who have met all of their deadlines and filed their dispositive motion.  The undersigned has also considered what would normally be "lesser" sanctions, including sanctioning Plaintiff by deeming certain facts to be established or prohibiting him from supporting specific claims.  Here, though, Plaintiff has no need of objective evidence to support his sworn version of the facts.  It was Defendants who needed to test Plaintiff's adherence to his version of the facts before the dispositive motion deadline expired.  As in *Smith*, lesser sanctions "will not substitute for plaintiff's failure to appear . . . for his deposition."  345 F. App'x at 320.

Plaintiff, to his credit, Doc. 61, does not take issue[12] with the fact, as Defendants claim, that Judge Roberts "notified [him] that dismissal could result if [he was] noncompliant with the proper notice." Doc. 59, at 8.

## III.   Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends that Defendants' motion for the sanction of dismissal of this action with prejudice, Doc. 59, be granted.  Should this recommendation be adopted, the undersigned further recommends that Defendants' motion for summary judgment, Doc. 66, Plaintiff's motion for summary judgment, Doc. 72, and Defendants' motion to strike, Doc. 73, be deemed moot.[13]

The parties are advised of their right to object to this Report and Recommendation by March 24, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[12]    *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived").

[13]    Plaintiff's discovery request, Doc. 68, is erroneously shown as a pending motion on this Court's docket.

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 4th day of March, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE